DECISION

INTRODUCTION

This matter came before Associate Justice Todd R. Matha, Associate Justice Trida A. Zunker and Chief Justice Mary Jo Hunter on appeal of the Trial Court’s Judgment (Upholding Reissued Order), CV 12-73 (HCN Tr. Ct„ May 15, 2014) (hereinafter, “Judgment ”), contesting the Trial Court’s decision that affirmed the Ho-Chunk Nation Enrollment Committee’s (hereinafter, “Enrollment Committee”) decision in favor of Appellee. This Court convened Oral Argument on October 4, 2014. Ho-Chunk Nation Department of Justice Attorney Wendi Huling represented Appellee, Enrollment Committee. Appellant Mary Blackdeer An-wash appeared pro se, but did not present oral argument.
On appeal, Appellant raised five (5) issues. The first issue is whether the presence of Affiant’s immediate family member on the Enrollment Committee violates the Ho-Chunk Nation Code of Ethics Act, 2 HCC § 1 (hereinafter, “Ethics Code”). In this instance, we affirm the result rendered by the Trial Court on this issue. The second issue is whether 2 HCC § 7.10a constitutes an ex post facto law. Again, we affirm the result of the Trial Court and hold no. The third issue is whether the failure to grant more eviden-tiary weight to the certified birth certificate was arbitrary, capricious or unreasonable. On this issue, we hold no. The fourth issue is whether a DNA test against alleged siblings who themselves have not established proven DNA constitutes clear and convincing evidence of paternity.[1] We hold no to the extent testing is conducted solely against alleged paternal half-siblings and remand to the Trial Court for a decision consistent with this opinion. Finally, the fifth issue is whether 2 HCC § 7.10b(2) is void for vagueness or overbroad in scope. We hold no.

PROCEDURAL HISTORY

The procedural history in this case is lengthy. On September 28, 2012, the Enrollment Committee held a hearing regarding Appellant’s enrollment in the Ho-Chunk Nation. The Enrollment Committee adopted its administrative decision on September 28, 2012, sent by letter dated October 8, 2012. Decision, Enrollment Comm., In re: Enrolment of Mary An-wash Blackdeer, Sept. 28, 2012 (hereinafter, “Decision ”), The Decision ordered Appellant to submit to DNA analysis with two paternal sibling relatives. On November 5, 2012, Appellant appealed to the Ho-Chunk Nation Trial Court and filed a Petition for Administrative, Review, The case languished at the Trial Court level through a series of motions and judgments, culminating with the Judgment issued on May 15, 2014.[2]
The Appellant timely filed her Notice of Appeal pro se in the Ho-Chunk Nation Supreme Court on July 10, 2014. The Order (Accepting Appeal) was issued on July 14, 2014, and the Order (Reschedul *120 ing Oral Argument) was issued on July 23, 2014. Appellant’s Brief was filed on August 22, 2014, and a Resubmitted Brief was filed on September 12, 2014. Appel-lee’s Response Brief was filed on September 22, 2014. Appellant submitted a letter requesting waiver of oral argument on September 29, 2014, due to her pro se status. Appellant’s Reply Brief was filed on October 1, 2014. Oral argument was convened on October 4, 2014. Appellant was not required to argue her position at oral argument.[3]

ISSUES PRESENTED

1. Does the presence of an Affiant’s immediate family member on the Enrollment Committee during an enrollment hearing violate the Ethics Code?
2. Does 2 HCC § 7.10a constitute an ex post facto law?
3. Was the failure to grant more evi-dentiary weight to the certified birth certificate arbitrary, capricious or unreasonable?
4. Does a DNA test against alleged half-siblings who themselves have not established proven DNA constitute clear and convincing evidence of paternity?
5.Is 2 HCC § 7.10b(2) void for vagueness or overbroad in scope?

STATEMENT OF FACTS

Appellant is a sixty-seven (67) year old currently enrolled elder in the Ho-Chunk Nation. Her birth certificate states her date of birth is November 25, 1947. Her birth certificate lists Lila Thomas as her mother and Harry Blackdeer[4] (hereinafter, “Mr. Blackdeer”) as her father. Appellant has three (3) full siblings and three (3) paternal half-siblings. Tr. of Hr’g Re: Enrollment of Mary Blackdeer Anwash (hereinafter, “Hearing Transcript ”) at 56-57, Sept. 28, 2012. Mr. Blackdeer passed away on March 14, 1971. He never took a DNA test to establish paternity with any of his children.
Appellant was enrolled with the Ho-Chunk Nation in 1978.[5] Her certified birth certificate was one of the documents considered as part of her enrollment, and her application for enrollment with the Nation was approved. Presumably, the Business Committee that reviewed Appellant’s application for enrollment had some convincing proof of her eligibility or they would have denied her membership. As she was added to the membership roll, one *121 can only surmise that the Business Committee reviewed her application, verified the documentation substantiating her blood quatum and ancestry, and issued the final decision to enroll her.
A prior disenrollment action was commenced against Appellant in 2009, but the action was dismissed when one affiant, Betty White, was unable to testify in person or by telephone on two separate occasions. The Enrollment Committee entered an Order that the affiants failed to meet the requisite evidentiary standard, and the matter was dismissed.
Ruby Garvin, Janice Goldman, and Betty White each filed affidavits with the Office of Tribal Enrollment to initiate the removal proceedings of Appellant in accordance with Tribal Enrollment And Membership Code (hereinafter, “Membership Code”) 2 HCC § T.10b(2). Goldman filed an affidavit on July 25, 2012. Garvin and White filed affidavits on August 6, 2012. On September 28, 2012, the Enrollment Committee convened a hearing regarding Appellant’s enrollment, which consisted of testimony from Appellant and other witnesses and a review of documentary evidence regarding Appellant’s enrollment with the Ho-Chunk Nation. Witness testimony focused on alleged statements by Mr. Blackdeer to people other than the affiants that Appellant was not his daughter. Further testimony alleged this lack of paternity as well-known in the Ho-Chunk community. It is unclear from the transcripts and Trial Court record why this action was commenced over forty (40) years after Mr. Blackdeer’s death.
The Decision, rendered by the Committee on September 28, 2012, and sent to Appellant by letter dated October 8, 2012, ordered:
the Affected Member, and two (2) paternal sibling relatives need to establish Ho-Chunk Nation blood quantum and lineage, submit to DNA analysis to be conducted by an independent testing laboratory contracted by and paid by the Ho-Chunk Nation. The Affected Member must contact the Office of Tribal Enrollment in order to set testing times and locations for her and the selected relative(s).
Decision at 1. The Decision does not specify which siblings must submit to DNA testing, but Appellee contends two (2) paternal half-brothers have offered to test. Resp. Br. at 9.
The Decision was adopted at the hearing following an affirmation vote of six (6) members, with (0) zero members opposed and (0) zero members abstaining. The Decision was signed by Valerie R. Kem-pen, Chairperson for the Enrollment Committee. Other members of the Enrollment Committee included: Brenda Brown, Pat Schulz, Irene Keenan, Janice Savage, Lucinda LoneTree and Hattie Walker. At issue is the presence of Brenda Brown on the Enrollment Committee for Appellant’s enrollment hearing.
Brenda Brown is the sister of Betty White, one of the affiants in this matter. Appellant raised this concern at the start of the hearing. A discussion ensued during the hearing whether Brown should re-cuse herself due to her sibling status with one affiant. Brown indicated she did not believe a conflict existed and stated: “Well I believe as a committee member I am fair and impartial to this issue. Have nothing to do as a witness to whatever affidavit or whatever she’s talking about.” Hr’g Tr, at 6. The Committee members then decided that there was no need for Brown to re-cuse herself. Id.
In response to the Decision rendered by the Committee, Appellant appealed first to the Trial Court, which affirmed. Appel *122 lant then appealed the Trial Court Judgment to the Supreme Court.

STANDARD OF REVIEW

This Court possesses the constitutional authority “to interpret and apply the ... laws of the Ho-Chunk Nation,” and may render binding “conclusions of law.” Constitution of the hg-chunk nation (hereinafter, “Constitution”), art. VII, §§ 4, 7(a). When reviewing questions of law, the Court employs a de novo standard of review, meaning that it examines a matter anew. Hope B. Smith v. Ho-Chunk Nation et al., SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 5 n. 3.
The Supreme Court has previously ruled that the Court may review agency constitutional interpretations de novo. Willard LoneTree v. Larry Garvin, SU 07-04 (HCN S.Ct., Oct. 8, 2007) at 4. However, LoneTree, unlike the present appeal, involved agency interpretation and application of notions of constitutional procedural due process. Here, the Enrollment Committee is decidedly acting pursuant to and in furtherance of statutory standards. The Committee is not offering an interpretation of a constitutional provision, even those relating to enrollment.
The Membership Code states a level of a review for appeals to the Trial Court.[6] It is silent regarding a standard of review to be employed by the Supreme Court. In this matter, the Trial Court served an appellate function and did not issue any findings of fact. Consequently, the Supreme Court should generally subject an administrative decision to the same standard of review articulated for trial level judicial review of agency action in the statute. Therefore, this Court will determine whether the findings and recommendations of the Enrollment Committee: (1) contain irregularities of procedure; (2) are arbitrary, capricious or unreasonable; (3) are unsupported by Clear and Convincing Evidence upon the whole record; or (4) involve an abuse of discretion. To the extent there are new questions of law raised on appeal, we employ de novo review.

DECISION

At issue here is enrollment of an elder tribal member. The significance of this matter cannot be overstated. This Court is sensitive to the fact that disenrollment can lead to a deprivation of identity previously held essential to an individual. However, the circumstances of the individual, regardless of how long he or she may have been enrolled in the Ho-Chunk Nation, cannot trump the requirements for an enrolled member as stated in the Constitution. The minimum Ho-Chunk blood quantum requirement is one-fourth (1/4) Ho-Chunk blood.
Art. II—Membership
Sec. 1. Requirements. The following persons shall be eligible for membership in the Ho-Chunk Nation, provided, that such persons are not enrolled members of any other Indian nation:
a. All persons of Ho-Chunk blood whose name appear or are entitled to appear on the official census roll pre *123 pared pursuant to the Act of January 18, 1881 (21 Stat. 315), or the Wisconsin Winnebago Annuity Payroll for the year one thousand nine hundred and one (1901), or the Act of January 20, 1910 (36 Stat. 873), or the Act of July 1, 1912 (37 Stat. 187); or
b. All descendants of persons listed in Section 1(a), provided, that such persons are at least one-fourth (1/4) Ho-Chunk blood.
Const., art. II, § 1(1—b).
In addition, the Constitution grants the Ho-Chunk Nation Legislature (hereinafter, “Legislature”), the power to make laws, including codes, ordinances, resolutions and statutes, and requires the Legislature to adopt a Code governing Membership. Id. art. V, §§ 2(a), 3. Thus, in accordance with the requirements of the Constitution, the Membership Code, 2 HCC § 7, governs enrollment actions. Under the Membership Code, grounds for removal include:
10. Ineligible Tribal Member Removal Procedures

a. Grounds for Removal.

(1) The Member is less than one-fourth (1/4) Ho-Chunk Blood (Article II, Section 1(b) of the Constitution);
(2) insufficient proof of Ho-Chunk ancestry (Article II, Section l(a0) of the Constitution);
(3) the Member is enrolled in another Indian Nation (Article II, Section 1 of the Constitution); or
(4) the Member was previously enrolled in another Tribe (Article II, Section 1(c) of the Constitution); this provision took effect for Members enrolled on or after March 3, 2000.
2 HCC § 7.10a. Thus, the minimum blood quantum requirement is clear in both the Constitution and the Membership Code.
The right to make determinations regarding tribal membership is one of the basic powers of the Ho-Chunk Nation as a sovereign Nation. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The exercise of this inherent authority to determine membership “is legitimate when it does so within constraints of [the] Constitution and the laws promulgated thereunder.” Theresa Lynn Hendrickson v. HCN Office of Tribal Enrollment, SU 02-06 (HCN S.Ct., Mar. 21, 2003) at 3-4. Nothing decided in this case diminishes the inherent authority of the Ho-Chunk Nation to make membership decisions or to determine the process for making those decisions.
I. The presence of Brenda Brown, sister of affiant Betty White, did not constitute a conflict of interest because Brown did not possess a direct personal or financial interest and indicated her ability to remain impartial.
The Trial Court declined to rule directly on this issue because of a procedural defect. Under the Ethics Code, the process for determining an ethics violation begins with the filing of a complaint with the Ethics Review Board. 2 HCC § 1,12a. The Trial Court stated that the “Court shall not condone and pass judgment upon an issue that is not properly before the Court.” J. at 13. In this regard, the Trial Court adhered to a policy of requiring exhaustion of administrative remedies pri- or to adjudication. See, e.g., Williamson County Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Myers v. Bethlehem Shipbuilding Carp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)
This Court agrees that the proper administrative process must be followed. Unfortunately, at the time the Judgment was issued in this case, the one year stat *124 ute of limitations for filing the complaint with the Ethics Review Board had passed. 2 HCC § 1.12a((), This fact precludes review of the first articulated issue. Jenna C. Littlegeorge v. Adam J. Hall, Enrollment Officer, et al., SU 12-03 (HCN S.Ct., Jan. 18, 2013) at 4-5. Exhaustion of the administrative process represents a clear prerequisite to judicial review and an acknowledgment of the constitutional separation of powers doctrine. Const., arts. Ill, § 3, IV, § 2; see also Sandra Slimcki v. Rainbow Casino et al„ SU 96-15 (HCN S.Ct., June 20, 1997) at 3; Loa Porter v. Chloris Lowe, Jr., SU 96-05 (HCN S.Ct., Jan. 10, 1997) at 5.
II. 2 HCC § 7,10a is not an ex post facto law because the minimum blood quantum requirement for enrollment has not changed, and Appellant misapplies the doctrine in this case.
Appellant claims that 2 HCC § 7.10, the “Ineligible Tribal Member Removal Procedures” provision, is an ex post facto law because it was passed after Appellant was enrolled in the Ho-Chunk Nation. The Constitution explicitly and emphatically forbids the Nation from passing ex post facto laws. Const, art. X, § 1(a)(9). To pass an ex post facto law would be an unconstitutional act, and therefore beyond the authority of the Legislature. The Court could declare any such law a violation of the Constitution and enjoin its enforcement. Id., art. VIII, § 6(b).
The Court must then examine whether 2 HCC § 7.10 is an ex post facto law. Ex post facto is defined as “a law that applies retroactively, esp. in a way that negatively affects a person’s rights by criminalizing action that was legal when it was committed.” Black’s Law Dictionary 600 (6th ed. 1999). In other words, an ex post facto law is legislation that retroactively alters the criminal law in a substantially prejudicial manner so as to deprive a person of any right previously enjoyed for the purpose of punishing the person for some past activity. The basic principle behind the prohibition of ex post facto laws is that of due process, specifically notice. Said differently, one should have the ability to know that one is breaking the law prior to doing something that might be sanctioned. See Parmenton Decorah v. HCN Legislature et al., CV 99-08 (HCN Tr. Ct., July 1,1999) at 8.
The Trial Court performed an exhaustive analysis on this issue, resorting to persuasive foreign court case law. While “only decisions by this [CJourt are limitations on the Trial Court,” this Court agrees with the ultimate determination. Jacob LoneTree et al. v. Robert Funmaker, Jr. et al., SU 00-16 (HCN S.Ct., Mar. 16, 2001) at 4. But, more succintly, the requirement of membership has not changed. The blood quantum requirement of one-fourth (1/4) Ho-Chunk blood exists now as it did when Appellant was originally enrolled. Thus, no penalty can arise which would be unjust.
Generally, an ex post facto examination relates to the criminal law, but courts have extended ex post fact,o analysis to civil laws where the effect of the civil law is so clearly punitive as to negate the legislature’s intention. See Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). Thus, the fact that this case is not a criminal matter is not decisive. What is critical regarding ex post facto law's is that a party suffers harm, usually a penalty in the form of deprivation. While ex post facto laws necessarily involve the deprivation of a right, most notably the right of liberty in the context of criminal laws, the deprivation potentially suffered here is a deprivation of identity. This is clear. But, the revised and relevant portion of the Membership Code does not equate to an ex post facto law. One’s potentially erroneous identification as Ho-Chunk does *125 not and cannot trump the Constitution, which requires a minimum blood quantum of one-fourth (1/4) Ho-Chunk blood for enrollment. This was the law when Appellant was initially enrolled. It has not changed. The process for proving blood quantum, by establishing paternity, has changed with modern technology and the ability to prove paternity through DNA testing. But this does not change the basic underlying blood quantum requirement.
While disenrollment may certainly seem to penalize the disenrolled member, a person must possess the requisite blood quantum to be a lawful tribal member. If a tribal member is disenrolled for lacking the requisite blood quantum, that individual should not have been enrolled initially and the resultant disenrollment is not a penalty, but a just result under Ho-Chunk law. Nothing here is ex post facto, and the argument raised by Appellant misapplies the definition of ex post facto to these facts. Thus, we affirm the Trial Court’s decision that 2 HCC § 7.10 is not an ex post facto law.
III. Failure to Properly Consider the Live Certificate of Birth Was Not Arbitrary, Capricious and Unreasonable Because Paternity is in Dispute and Reliable DNA Analysis is Possible Under These Circumstances.
Appellant claims that the Enrollment Committee failed to properly consider the Certificate of Live Birth. The applicable provision from the Membership Code states:
Greater weight will be given to the following documents: verification of enrollment in another Indian Tribe, certified birth certificate, social security card, Court Orders, and DNA analysis.
2 HCC § 7.10f(10)(e). The Legislature’s inclusion of several forms of evidence afforded greater weight in removal proceedings reveals DNA analysis is not the exclusive method of eligibility verification. A plain language analysis indicates that one form of evidence does not predominate over any other listed form of evidence. The cited provision further confirms that the evidence listed in this provision should be afforded greater weight than witness testimony, a type of evidence clearly absent from 2 HCC § 7.10f(10)(c).
Several forms of evidence were introduced at the hearing on September 28, 2012, including Appellant’s testimony, witness testimony from the three (3) affiants, and the certified birth certificate. The witness testimony included hearsay evidence from each of the affiants.[7] Formal rules of evidence do not apply to enrollment hearings under the Membership Code, so hearsay evidence is not necessarily barred from admission or consideration, and, in any event, exceptions to the hear *126 say rule may apply.[8] However, evidence that is irrelevant, cumulative, or would be unfair or prejudicial may be excluded or admitted by the Chairperson in special circumstances. 2 HCC § 7.10f(10)(a).
The birth certificate was reviewed, but regardless the Enrollment Committee ordered DNA analysis. The statute does not give one greater weight over the other. See 2 HCC § 7.10(f)(10)(c). While the statute may indicate various forms of evidence that should be assigned greater weight, the presence of one form of evidence does not preclude the introduction or necessity of another form of evidence. The Trial Court has previously examined this issue. In 2012, the Trial Court engaged in statutory analysis of HCC § 7.10f(10)(c) and determined:
The Legislature’s inclusion of DNA analysis within select evidence granted greater weight highlights the value such testing offers in determining enrollment eligibility. Under circumstances in which an enrolled member’s ability to maintain a required minimum blood quantum hinges on disputed paternity, DNA testing provides scientific certainty which would prove essential to protecting the integrity of the Ho-Chunk Nation Membership Roll.
Sandra Sliwicki v, HCN Enrollment Comm., CV 11-63 (HCN Tr.Ct., July 10, 2012) at 11. That is to say, the existing certified birth certificate cannot be granted equal weight with a potential DNA test that can definitively prove paternity. In most enrollment disputes, a procedurally valid birth certificate existed. On this point, the Court must move away from questioning the “authenticity” of the document. The birth certificate is “authentic” in the sense that it may have been properly certified, but that does not make the statements contained on the document true. Still, if the Enrollment Committee simply chose to end its inquiry with receipt of a certified birth certificate, non-Ho-Chunks would remain on the Enrollment Roll today, as well as potential offspring, despite possessing no Ho-Chunk heritage.
The instant case serves as a clarifying example of where the certified birth certificate does not suffice. Paternity is questioned, and Appellant’s sole link to the Ho-Chunk Nation is through her alleged father. So long as DNA can be reliably analyzed with appropriate samples, including DNA as a form of evidence in conjunction with the certified birth certificate is correct. The two (2) forms of evidence are not mutually exclusive, and we agree with the Trial Court’s reasoning in Sliwicki on this point. Further, we affirm the Trial Court’s holding on this issue.
IV. A DNA test against alleged half-siblings, who themselves have not proven DNA against deceased father, does not constitute clear and convincing evidence of paternity, and ordering Appellant to submit to a DNA test under these facts is arbitrary, capricious and unreasonable, but testing against both a full-sibling and a half-sibling for comparison would meet the statutory standard of “clear and convincing” evidence.
Several possible findings and recommendations exist at the conclusion of an enrollment hearing under the Membership Code.
*127 g. Findings and Recommendations.
(4) Committee Findings and Recommendations. The Committee on Tribal Enrollment may render any of the following findings and recommendations:
(a) Find that the removal by the Affi-ants is Frivolous and/or Malicious and dismiss the removal.
(b) Find that the Affiants or Tribal Enrollment Officer failed to meet the evidentiary standard necessary to remove a Member and dismiss the removal.
(c) Find that an Affected Member, through admission, does not meet the Membership requirements and proceed with the removal.
(d) Find that the Affected Member is ineligible for Membership if documentary and/or evidence shows by Clear and Convincing Evidence that the Affected Member does not meet the qualifications for Membership outlines in Article II, Section 1 of the Ho-Chunk Constitution.
(e) If the Committee finds the Affected Member is ineligible for Tribal Membership, it may further recommend the forfeiture of any or all property of the repayment of money received from the Nation, pursuant to the laws of the Nation. This may only happen upon determination by the Committee that the evidence establishes beyond a reasonable doubt that the Affected Member became a Member through fraud.
(f) Order that the Affected Member, and their relatives needed to establish Ho-Chunk lineage, submit to DNA analysis to be conducted by an independent testing laboratory contracted by and paid by the Ho-Chunk Nation. The Affected Member must contact the Office of Tribal Enrollment in order to set testing times and locations for him or her and the selected relative(s).
2 HCC § 7.10g(4). We must focus on the final subsection.
The Enrollment Committee Decision ordered:
the Affected Member, and two (2) paternal sibling relatives need to establish Ho-Chunk Nation blood quantum and lineage, submit to DNA analysis to be conducted by an independent testing laboratory contracted by and paid by the Ho-Chunk Nation. The Affected Member must contact the Office of Tribal Enrollment in order to set testing times and locations for her and the selected relative(s).
Decision at 1. The reason for selecting this option as opposed to other options available to the Enrollment Committee as proscribed under 2 HCC § 7. 10g(4) was to establish clear and convincing evidence that Appellant is the biological daughter of Mr. Blackdeer.
The Constitution vests legislative power in the Legislature as delegated by the General Council. Const., art. IV, § 2. As noted above, the Legislature has the power to make laws, including codes, ordinances, resolutions and statutes. Id., art. V, §§ 2(a), 3. Here, the Constitution contains provisions that the Legislature enact a Membebship Code, which the Legislature enacted through the Membership Code. Id., art. II, § 5. The Constitution indicates that “[ajny person who has been rejected for enrollment or who has been removed from the Membership Roll shall have the right to appeal to the Judiciary for a remedy in equity consistent with this Constitution.” Id., art. II, § 6.
The Constitution designates the Judiciary as “hav[ing] the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.” Id., art. VII, § 4. As explained previously by the Trial Court:
The Tribal Eneollment and Membehship Code creates a committee to conduct *128 administrative adjudication by way of appeals. 2 HCC § 7.8, However, by virtue of legislation, the Committee appears to perform administrative adjudication. Whether it is through adjudicatory rulemaking, informal rulemaking or legislative rulemaking, this presupposes that the Legislature has the constitutional authority to make enrollment decisions. The Legislature does not have the authority and cannot delegate power it does not retain; therefore, any informal, formal or legislative rulemaking made by a division or subdivision of an Executive Department would not require any judicial deference. The powers of the Legislature are enumerated within the Constitution, and the ability to determine membership is not one of the enumerated powers of the Legislature. Const, art., V, § 2. Nonetheless, the Court recognizes the legislative authority to enact a law governing membership to provide a mechanism to effectuate the constitutional membership provision.
Daria Powless v. HCN Enrollment Comm., CV 10-15 (HCN Tr. Ct3., Sept. 2, 2010) at 13.
Notably, the statutory limitation cannot supersede the constitutional grant of power to the Supreme Court. As stated previously, the Supreme Court “shall have the power to interpret the Constitution and laws of the Ho-Chunk Nation and to make conclusions of law.” Const., art. VII, § 7(a). At issue here is the interpretation of “Clear and Convincing Evidence” under the Membeeship Code.
The Membership Code defines “Clear and Convincing Evidence” as “evidence that tends to show, on its face, more likely than not, that fact which is trying to be proven.” 2 HCC § 7.3L However, this definition equates with the well-established standard of “preponderance of the evidence,” a lower standard of proof than “clear and convincing evidence.” A preponderance of the evidence standard is wholly inappropriate in this instance. The ability to sanction the disenrollment of a tribal member is the most severe authority we may exercise. Indeed, all involved bodies, be it the Enrollment Committee, the Judiciary or General Council, must proceed cautiously before reaching this extraordinary result. Simply put, one’s enrollment should not hinge upon the slightest tipping of the scale to the contrary, which is what the standard as incorrectly defined by the Membership Code allows.
In contrast, the Supreme Court earlier defined clear and convincing proof as “ “where the truth of facts asserted is highly probable.’ ” Joelene Smith v. Scott Beard et al., SU 00-14 (HCN S.Ct., Mar. 12, 2001) at 1 (quoting Black’s Law Dictionary 251 (6th ed. 1991)); see also Von Conten v. Research Sys. Corp., 739 F.2d 1264, 1268 (7th Cir.1984) (quoting Colorado v. New Mexico, 467 U.S. 310, 317, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984)) (requiring high probability of factual contentions). Because of the magnitude of enrollment matters, we employ the well-established definition of clear and convincing evidence to require high probability of the truth of the facts asserted. Furthermore, while formal rules of evidence do not apply at the hearing, evidence which is unfair may be excluded under special conditions or stipulations. 2 HCC § 7.10f(10)(a).
As stated supra, the Trial Court has previously held that where paternity is in dispute, DNA testing is essential to prove paternity, thereby “protecting the integrity of the Ho-Chunk Nation Membership Roll.” Sliwicki, CV 11-63 at 11. In this case, despite the existence of a certified birth certificate which was relied upon when Appellant was initially enrolled, Ap-pellee claims the birth certificate is ques *129 tionable because paternity is disputed (see part III, supra). Appellee claims that DNA analysis is necessary to provide clear and convincing evidence for Appellant to retain her membership with the Ho-Chunk Nation. The Trial Court agreed with Appellee. The Trial Court stated:
In the instant case, the petitioner’s biological mother is not a Ho-Chunk Nation Tribal Member and her father was a Ho-Chunk Nation Tribal Member. The three affiants disputed the paternity. Accordingly, the Committee doubted the authenticity of the Certificate of Live Birth. Under this situation, a DNA analysis would provide clear and convincing evidence to establish the petitioner’s required blood quantum. The use of DNA tests to determine this information is a common practice and is in fact required, by the Constitution in at least some cases. Const., Art. II, § 1(c). Therefore, the Committee’s finding and recommendation to require the petitioner to submit to a DNA analysis is not arbitrary and capricious.
J, 18-19.
Simply put, this analysis presumes fact which do not exist here—that there is actually a paternal sibling who has completed DNA testing against whom Appellant can compare results. There is not. See Tr. of Oral Argument at 9-10, SU 14-04 (Oct. 4, 2014), Nor is there a living sibling of Mr. Blackdeer against who Appellant could test. Id, Comparing Appellant’s DNA with any sibling assumes the tested sibling is the biological child of Mr. Blackdeer. This assumption simply defies logic and sets a dangerous precedent. It assumes paternity of some individuals who have never been tested or proved. For that reason, the Decision as currently drafted opens the door to frivolous and/or malicious enrollment actions, contrary to the intent of the Legislature. See 2 HGC § 7.12g(4)(i). DNA only tests paternity. As none of Mr. Blackdeer’s children have had a DNA test establishing his paternity, paternity cannot be established for any of them. At best, they can determine if they share the same father.
Appellee contends that alleged half-brothers exist who will test against Appellant. Testing half-siblings is insufficient for the reasons stated above. However, Appellant also has full-siblings. Notably, the standard of proof is not “beyond a reasonable doubt.” The standard of “clear and convincing” evidence requires proof that it is highly probable Appellant is the biological daughter of Blackdeer. DNA tests to a scientific certainty. While none of the alleged biological children have been tested, Appellant has half-siblings and full siblings. Testing the full siblings and half-siblings against each other is necessary to prove or disprove a genetic match. Should Appellant’s full siblings and half-siblings possess a genetic paternal match, the logical deduction is that their shared father is Mr. Blackdeer. This genetic match would also meet the requisite high probability required under the “clear and convincing” standard enunciated in the Membership Code. But, it is only met through testing and comparison of both a full sibling and a half-sibling. Simply put, this foundation must be established to ensure a reliable basis for analysis of Appellant’s DNA.
Appellant belabors the fact that Mr. Blackdeer is deceased, and no individual has completed a DNA test establishing paternity. If the standard within the Membesship Code required “proof beyond a reasonable doubt,” then Mr. Blackdeer’s unavailability would be determinative. However, the Code requires proof by “clear and convincing evidence.” A comparison against a full-sibling and a half-sibling establishing high probability of paternity meets this lower evidentiary stan *130 dard.[9] Importantly, this reliable basis does not exist testing solely against half-siblings who have not established DNA themselves. While the Decision does not specify which siblings shall submit to testing, Appellee contends half-brothers are willing to test. For the reasons stated above, testing solely these individuals will not meet the requisite clear and convincing standard. Therefore, the Decision issued by the Enrollment Committee must be clarified.
To be clear, this Court does not dispute the importance of DNA testing as it relates to enrollment of members and the essential function it can provide under the proper circumstances. But, in this instance the critical prerequisite is missing: a DNA test proving paternity of Mr. Blackdeer for any child, whether an alleged full sibling or half-sibling. As such, this Court disagrees that the results of a DNA test solely against half-siblings as proposed by Appellee will provide clear and convincing evidence of disputed paternity. It will only prove or disprove the existence a blood relationship between the individuals who submit to DNA testing. Reliability demands DNA testing against both a full-sibling and a half-sibling under the facts of this case, followed by a process of logical deduction. Thus, this issue is remanded to the Trial Court for a decision consistent with this opinion.
Y. 2 HCC § 7.10b(2) is neither vague nor overbroad.
The Supreme Court has favored a plain language approach and interpretation to the Constitution, statutes and contracts. See, e.g., Chloris Lowe, Jr. et e, v. HCN Legislature Members et al., SU 00-47 (HCN S.Ct., Mar. 13, 2001) at 6; Mam Advert. Agency, Inc. v. Ho-Chunk Nation et al. SU 04-07 (HCN S.Ct., Apr. 4, 2004) at 11; Greg Littlejohn v. HCN Election Bd. et al., SU 03-07 (HCN S.Ct., July 11, 2003) (Butterfield, J. dissenting) at 5; George Lewis v. HCN Election Board et al, SU 06-07 (HCN S.Ct., Mar. 12, 2007) at 7. The specific provision at issue is:
(b). Persons Authorized to Initiate Possible Removal.
(1) Initiation by Removal of Members. Any three (3) enrolled Ho-Chunk adult Members who are not Legal Incompetent may initiate a removal of a Member from the Membership Roll only by filing affidavits with the Office of Tribal Enrollment. The affidavits must clearly state the grounds for removal. A non-refundable filing fee of Fifty Dollars ($50.00) must accompany each affidavit.
2 HCC § 7.10(b)(2)
A. Vagueness Doctrine
“[TJhough common in writings generally, vagueness raises due process concerns if legislation does not provide fair notice of what is required or prohibited, so that enforcement may be arbitrary” and is further typified by “uncertain breadth of meaning.” Black’s Law Dictionary 742 (2d Pocket ed. 1996). The “vagueness doctrine” is defined as “based on the Due Process Clause—requiring that a criminal statute state explicitly and definitely what acts are prohibited, so as to provide fair warning and preclude arbitrary enforcement.” Id. at 743. The instant appeal is *131 not a criminal matter. However, because fair warning and preclusion of arbitrary enforcement are important, the Court will determine whether the above-stated provision is void for vagueness.
A plain language reading of the provision is clear. Three (3) enrolled Ho-Chunk members may initiate a removal against a member, so long as they are legally competent and eighteen (18) years of age or older. The process is commenced with the filing of affidavits which must state the grounds for removal. Fifty dollars ($50.00) payment must be provided along with each affidavit. The standards for commencing an action are basic and clear. The provision is not void for vagueness.
B. Overbreadth Doctrine
This doctrine directs “that if a statute is so broadly written that it deters free expression, then it can be struck down on its face because of its chilling effect— even if it also prohibits acta that may legitimately be forbidden.” Id. at 507. This Court would be hard-pressed to apply this doctrine here because we are not confronted with an issue of free speech as one’s speech is not regulated here. However, considering “ft]he affidavits must clearly state the grounds for removal,” speech is implicated. Yet, the provision as written certainly does not limit one’s ability to engage in free speech. Indeed, it simply requires grounds for removal be clearly stated, in effect granting more liberty to the speaker, thereby reducing any potential chilling effect. As such, the provision is not overbroad.

CONCLUSION

For the foregoing reasons, the Trial Court’s Judgment is affirmed regarding Brenda Brown’s participation as an Enrollment Committee Member; affirmed regarding the determination that no Ex Post Facto law exists here; affirmed regarding the proper evidentiary weight given to the certified birth certificate; and remanded for clarification regarding the order requiring DNA testing against two (2) paternal siblings. Further, this Court holds 2 HCC § 7.10h(2) survives review under both the vagueness doctrine and the over-breadth doctrines.
EGI HESKEKJET.

. "DNA” is the acronym for deoxyribonucleic acid, which is that nucleic acid that carries the genetic information in the cell and is capable of self-replication and synthesis of ribonucleic acid "RNA.” 2 HCC § 7.3(r).

. See J. at 1-2 for an account of the procedural history of the case in the Trial Court.

.While a case may be dismissed in Trial Court if a party with the burden of proof fails to attend a substantive hearing, HCN R. Civ. P. 56(B), there exists no equivalent appellate rule. Rather, the Supreme Court "decide[s] all cases upon the briefs, memoranda and statements filed plus the oral argument, if heard.’’ HCN R.App. P, 15(b) (emphasis added). Quite clearly, the presentation of oral argument does not constitute a mandatory requirement. Also, the federal rules would not require dismissal under similar circumstances. Fed, R.App. P. 34(e) (“If the appellant fails to appear for argument, the court may hear the appellee’s argument.’’); see also HCN R.App. P. 1 (a) (permitting resort to federal rules for guidance).

. The decedent is referred to as Harry Black-deer, Jr. in various Trial Court documents. However, on the birth certificate, his name is listed as “Harry Blackdeer.”

. There appears to be dispute regarding Appellant’s enrollment date. Appellee's Response Brief in this case states Appellant was enrolled on January 14, 1989. Resp. Br., SU 14-04 (Sep. 22, 2014) (hereinafter, "Response Brief”) at 3. However, the record indicates her application, under the name "Mary Ellen Blackdeer,” was approved by the Wisconsin Winnebago Business Committee (hereinafter, "Business Committee”) on October 26, 1963. Hr'g Tr. at 12. Other documents indicate official enrollment was in 1978.

. 12. Appeals to the Trial Court.
b. Scope of Judicial Review. Decisions of the Trial Court will be based upon a review of the record of the Committee on Tribal Enrollment’s proceedings, oral arguments, if any, and any written statements submitted. The Trial Court will not exercise de novo review of me Committee's findings and recommendations and will give proper deference to the expertise of the Committee and to its determinations of credibility, The Trial Court will not substitute its discretion for discretion legally vested in the Committee. The Trial Court will strictly construe the provisions of this Code.
2 HCC § 7,12b.

. Ruby Garvin's testimony included:
Q: Did Harold Blackdeer, Jr. ever directly tell you that Miss Mary Blackdeer is not his daughter?
A: No, we all know. We know. They didn’t have to tell us.
Hr'g Tr. at 25,
Betty White's testimony included:
G: Do you have any direct knowledge that Miss Anwash may not be eligible for enrollment?
A: No. It's just been—well, the whole—out whole area knows that she’s not Ho-Chunk.
Q: Did her father ever tell you directly he was not her biological father?
A: I have been told by a few of her so-called relatives, Boye Ladd told me that she was—she didn't have an inkling of Ho-Chunk blood in her, and that he was glad to get her off our rolls, and my brother heard from Harold himself that she didn’t belong to him at all.
*126 Id. at 38.

. Because formal rules of evidence do not apply, this Court will not engage in an analysis of hearsay and any potential exceptions in this case other than to note the policy against admission of hearsay is to ensure reliable evidence.

. Under the established facts of this case, there exist half-siblings and full-siblings against who Appellant may test to meet the requisite standard of proof under the Membership Code. However, the Court conceives a scenario where only half-siblings exist. In that case, paternal first cousins, as regarded in Anglo kinship terms, may conceivably exist to provide a secondary testing source to meet the requisite standard. The Court reserves further commenting upon such a possibility absent the necessary prerequisite factfinding.