J. ZUNKER,
Dissenting:
The majority has determined the Trial Court appeal filed by Appellant was late and therefore she should not be on the ballot for the District 4 Special Election by declaring the plain language of the applicable statute renders the time to file appeal with Trial Court begins to run once the Election Board voted at the meeting convened to address all appeals on Feb. 9, 2015. Unfortunately, this decision results in differential treatment for candidates who are present at the Election Board meeting and candidates who are not present. It creates serious potential administrative problems. The Code is silent regarding a writing at the appellate stage at issue. But this justice cannot join the majority opinion as reasoned. Further, the Appellee indicated she attempted to file an appeal on February 10, 2015 with the Trial Court, but was instructed by a court staff attorney that she would need a letter from the Election Board for her case to progress more quickly. Tr. of Oral Arg. Re: HCN Election Bd. v. Valerie Kempen, (hereinafter, “Oral Argument Transcript”) at 16, March 13, 2015. The Supreme Court is not a factfinding body and at a minimum, this case should be remanded to the Trial Court for further fact-finding on this issue even under the majority position. However, for the foregoing reasons, this justice respectfully dissents and would uphold the Trial Court Minute Order.
I. “Issue a Decision” is not synonymous with “Actual Notice” and the Election Board misapplies the concept of “actual notice” to the Election Board’s duty to issue a decision under the Election Code.
This Court possesses the constitutional authority “to interpret and apply the ... laws of the Ho-Chunk Nation,” and may render binding “conclusions of law.” HCN CONST., art. VII, §§ 4, 7(a). At issue here is the interpretation of the language of 2 HCC § 6.8(g)(2) which states:
The Election Board shall immediately notify a candidate in writing by certified mail if the candidate does not meet the qualifications of office. The candidate shall have five (5) working days from the date of receipt of notice to appeal the eligibility determination to the Election Board. The Election Board shall issue a decision within five (5) working days of receipt of the appeal. The candidate/appellant may appeal the decision of the Election Board to the Trial Court within five (5) working days of the decision only upon the grounds that it is inconsistent with the Election Code (2 HCC § 6) and/or the Constitution.
This provision references two decisions received by the potential candidate. The first decision is based on the initial determination of whether to certify candidate upon review of submitted candidate materials and the second decision is based on an uncertified candidate’s appeal to the Election Board. The provision clearly states the first communication to the candidate requires notification “in writing by certified mail” that he or she does not meet the qualifications for office, meaning the individual will not be certified. Potential candidate can then appeal within 5 days from the receipt of the notice to appeal to the Election Board. After that *222 appeal occurs, the Code states “[t]he Election board shall issue a decision within five (5) working days of receipt of the appeal” Id. (emphasis added). This section of the provision is at issue in this case and examined at length herein. At the outset, however, even under a plain view meaning of this section, no reference to “notice” is made in this critical sentence, which was the basis for Appellant’s argument.
The Trial Court determined the Appellant issued their decision denying the administrative appeal as the date of service of the written letter informing her of the denial, which was February 11, 2015 and not the date of the hearing, which was February 9, 2015. The Trial Court provided three reasons for this determination.[1] First, “this is in accord with its practice in other administrative areas.” Order (Enjoining Legislative Election; Denying Motion to Dismiss; Reversing and Remanding), CV 15-03 (HCN Tr. CL, March 4, 2015) at 24. Second, practical problems arise if “issue a decision” is equated with notice of the Board’s actions, including a lack of written decision, lack of adequate notice to why the appeal was denied and a lack of definitive date the decision was made, just to name a few.” Id. Finally, the Trial court determined “the date of service most effectively provides for a written record and straightforward guidance to litigants .... the defendants’ theory could result in plaintiffs being forced to file their appeals without any tangible basis or evidence for the exhaustion of their administrative remedies.” Id. at 25. This justice agrees with all three principles set forth by the Trial Court but believes further explanation is warranted. First, the problem with the Appellant’s interpretation is that is equates “issue a decision” in the applicable provision with “actual notice.” Actual notice stems from a concern for ensuring procedural due process. But the two concepts are simply not synonymous rendering a perversion of the provision as interpreted by Appellant. The former is an action taken by the Election Board while the latter is a noun possessed by the potential candidate. Additionally, the provision will be reviewed for vagueness and ambiguity as it concerns the interpretation of “issue a decision” in 2 HCC § 6.8(g)(2).

A, Void-for-Vagueness

“[Tjhough common in writings generally, vagueness raises due process concerns if legislation does not provide fair notice of what is required or prohibited, so that enforcement may be arbitrary” and is further typified by “uncertain breadth of meaning.” Black’s Law Dictionary 742 (2d Pocket ed. 1996). The void-for-vagueness doctrine is a doctrine in constitutional law which often is applied in the criminal law context. Mary Ellen Blackdeer Anwash v. HCN Enrollment Comm., 12 Am. Tribal Law 117 (HCN S.Ct.2014) at 22. But it is alive and well in the civil context as well. The void-for-vagueness doctrine addresses at least two connected but discrete due process concerns: first, that parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an *223 arbitrary or discriminatory way. See Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). An examination of both these concerns is below.

1. Parties should know tvhat is required of them so they may act accordingly.

The Appellant’s position changes depending on whether the potential candidate actually attended the meeting. Regardless of whether the candidate is present or not, a decision will occur at the meeting. Appellant focuses on “actual notice” which is not the language of the statute. The statute requires the Appellant “issue a decision” to the potential candidate. In the instant case, Appellee was present at the meeting wherein the Election Board declined to certify her on appeal to it. But if she was not, the clock to file the appeal would not begin until she received a written letter. This is not the language of the provision. The provision clearly states the Appellant must “issue a decision” and this language does not contemplate whether or not the potential candidate is present. The Appellant is charged with conducting elections in a fair and impartial manner, which includes at the certification stage. 2 HOC § 6.6(b)(2)(c). The Appellant makes an inexplicable and confusing leap from the Appellant’s responsibility to “issue a decision” in a fair and impartial manner to the concept of “actual notice” possessed by the potential candidate. Simply put, characterizing the “issuance” of a decision based on whether or not the candidate is present is arbitrary and discriminatory.
Furthermore, if the Appellant’s position is that the decision was issued at this time, it is perplexing that they also sent a letter. Appellant’s position is that a subsequent letter is not required when a party is present, though in this case, one was sent “as a courtesy.” Oral Argument Transcript at 8. What exactly the courtesy was is unknown. Whether Appellee was present is irrelevant—the vote to certify or not occurred at this meeting. Under either the majority position or Appellant position, the decision is “issued” when the vote is taken by the Election Board, regardless of the presence of any potential candidate.
First, if the Appellant’s position was correct, then it results in a lack of clarity to any potential candidate as to what is expected of him or her at this stage after the first required administrative appeal occurs and the Election Board votes to maintain decertification. Does the potential candidate file an appeal with the Trial Court based on his or her presence at the Election Board meeting convened to decide the first stage of appeal without a written decision? If yes, this opens the door to administrative problems. Essentially, the potential candidate files an appeal in the Trial Court with the initial letter stating his or her denial of certification by the Election Board. The doctrine of exhaustion requires all appeals with administrative bodies must occur before the result can be appealed in the Trial Court. Here, the Trial Court would have to rely on appeals filed with the initial denial letter along with the statements of the appellant/potential candidate that they did, in fact, first appeal to the administrative agency as required and that the appeal was unsuccessful. A plethora of avoidable problems may result, including confusion of candidates regarding the appropriate time to file in the Trial Court as well as to potential waste of judicial resources if an eager litigant files prematurely. The Trial Court has no way to know whether the Election Board did in fact “issue a decision” or whether the matter is ripe for appeal in the Trial Court based on the filings. The Trial Court would be not have *224 clarity on this issue until briefing or even hearing is convened and this preparation by judges, attorneys, court staff and pro se litigants is an avoidable waste of resources if the litigant files prematurely. That the drafters would not consider the flood of problems which could result from a lack of writing simply strains credulity.
Furthermore, suppose the potential candidate is not present at the Election Board appeal. The Board still votes whether or not to certify the candidate. The same action occurs. In the current case, Appellant argues the decision was issued at the Feb. 9 meeting and not in a subsequent letter because Appellee was present. The provision does not reference notice, nor does it reference a different manner in which the decision is issued based on candidate attendance during the Election Board appeal proceedings. Under the Appellant’s interpretation, the clock should still begin to run for the potential candidate, whether or not she is present at the meeting because the decision is “issued” at the meeting when the voting occurs. This goes to the very heart of a violation of procedural due process because the individual does not have notice and a meaningful opportunity to respond at the time of the vote.
Furthermore, the Appellant placed its argument on “actual notice” to the candidate, which was argued to occur here at the Feb. 9, 2015 Election Board meeting where the vote rendered Appellee remain decertified. The Appellant further contended if Appellant had not been present, a letter would have informed her of the result. Suppose a potential candidate was not present at the meeting but heard the results from a third party. The candidate has actual notice of the result prior to receipt of a written letter. Does the clock begin to run now despite the lack of direct communication from the Election Board? That would be an absurd result. Or, imagine a potential candidate was present at the meeting but did not understand the voting process or misunderstood the result until she receives clarification upon receipt of a written letter from the Election Board. Should she be penalized for her inability to understand the process as it occurs orally?
Indeed, logically to “issue a decision” must mean to render it in writing to the candidate to ensure due process of law. This definition cannot change dependent on a potential candidate’s presence at the appeal meeting as written. The majority would argue this is legislating from the bench, but this justice refers the majority to the constitutional duties of this Court, including the duty “to interpret and apply ,... the laws of the Ho-Chunk Nation.” HCN CONST., art. VII, §§ 4, 7(a).

2. Precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.

Second, precision and guidance are necessary so those enforcing the law are not acting in a discriminatory or arbitrary manner. Again, the critical concern is when the decision is “issued” which differs from notice. As stated above, the Election Board’s position is that, in some instances, the decision is issued if the potential candidate is present at the appeal meeting. If the potential candidate is not present at the appeal hearing, the decision is issued by letter to the candidate. The difference here is notice which is outside the scope of the relevant provision. Indeed, the same exact action happens at the appeal meeting—the Election Board meets to review the appeal filed by potential candidate and votes a second time on whether or not to certify the candidate. They come to a decision collectively at this time. But the *225 “issuance of the decision”—unchanging language in the Code—changes based on whether or not the potential candidate is present and this effectively results in arbitrary enforcement of this provision. The Election Board confuses and misapplies actual notice here with the critical provision regarding issuance of the decision as required under the Code. The result is arbitrary and discriminatory action.
Arbitrary is defined as “[depending on individual discretion; specif., determined by a judge rather than by fixed rule, procedure, or law.” Black’s Law Dictionary 41 (2d Pocket ed. 1996). In the administrative agency context, this can be extended to include determination by the agency rather than by fixed rule, procedure or law. If the Appellant determines a decision is “issued” contingent on a candidate’s presence at the appeal meeting, this constitutes arbitrary enforcement because this condition is not included as a part of the language of the statute and is decided based on the discretion of the Appellant.
Further, the action is discriminatory because potential candidates who attend the appeal meeting do not have to receive the benefit of a writing under the Appellant’s theory. While Appellant did send a letter “as a courtesy” in this case, counsel indicated this would not be necessary where the potential candidate is present at the appeal meeting. Oral Argument Transcript at 8. Presumably, several potential candidates could appeal and each candidate’s certification would be voted on during the meeting. The potential candidates who are not present would receive a written letter, which may allow for a better understanding and provides a stronger basis for appeal to the Trial Court as the potential candidate has a tangible writing on which to rely. Moreover, candidates who attend are discriminated against simply for their zealous efforts to gain certification. The clock starts running sooner for them, against candidates not present, but voted on at the same meeting. Under Appellant’s theory, the decision is issued upon voting for each candidate regardless of potential candidate presence. Yet, the candidate who is present loses the benefit of a writing and the clock begins running earlier. This is clearly discriminatory application and a violation of equal protection of the law. HCN Const,, art. X, § 1(a)(8). Equal treatment is required for all candidates, whether they are present or not, without concern to notice as notice is not addressed under a plain meaning reading of statute.

B. Ambiguity

Ambiguity is defined as “an uncertainty of meaning or intention, as in a contractual term or statutory provision.” Blaok’s Law Dictionary 33 (2d Pocket ed. 1996). This dissent has explained the uncertainty at length above and need not repeat. Notably, though, the rule of lenity, typically applied in the criminal context with respect to ambiguity, provides that any ambiguity should be resolved in favor of the defendant. Analogizing here, the potential candidate Appellee suffers a deprivation in that she should have originally been on the ballot because the Krystle Howald signature was valid[2] and she is being deprived *226 this opportunity. Certainly, being a candidate is not a fundamental right[3] but here, she has met the qualifications for candidacy and should have been certified at the Feb. 9, 2015 Election Board meeting.[4] She does suffer an avoidable deprivation and the rule of lenity as applied would state that any potential ambiguity should be resolved in candidate’s favor.
II. To “issue a decision” under 2 HCC § 6.8(g)(2) means to render it in writing to the potential candidate to ensure due process of law.
To “issue a decision” must mean to render it in writing to the potential candidate to ensure due process of law. This interpretation arises from the plain meaning of the critical sentence at issue in 2 HCC § 6.8(g)(2),[5] from review that the Trial Court’s determination on this matter was not an abuse of discretion[6] as well as a de novo review regarding this question of law,[7] from examination of practices of other administrative agencies in similar contexts,[8] from the necessity to ensure procedural due process protections exist for the potential candidate as it relates to preserving appeal in the Trial Court and from the need to ensure equal protection of the law to all candidates, irrespective of whether they are present at the Election Board appeal meeting. The statutory language does not equate “issue a decision” by the Election Board with the “actual notice” of the potential candidate. This Court’s primary constitutional obligation is to interpret the law. The appellant cannot logically support a proposed legal interpretation that “issue a decision” is dependent on candidate presence at the Election Board appeal hearing. For these reasons, I respectfully dissent from the majority *227 view and would affirm the Trial Court’s determination.
EGI HESKEKJET.

. Because of expediency concerns which arise with election appeals, Appellant appealed the Minute Order issued on Feb. 25, 2015 to provide immediate guidance to the parties and to give an opportunity to appeal to the Supreme Court, Minute Order (Enjoining Legislative Election), CV 15-03 (HCN Tr. Ct., Feb. 25, 2015) at 5. The Trial Court issued a more complete decision providing its full reasoning on March 4, 2015. See Order (Enjoining Legislative Election; Denying Motion to Dismiss; Reversing and Remanding), CV 15-03 (HCN Tr. Ct., March 4, 2015).

. The majority opinion does not reach this issue nor will the dissent address at length. However, it was clear that Appellee clearly proved Krystle Howald was Krystle Kempen through documentary evidence at the appeal meeting. That she would be deemed an “ineligible voter” under the Code for failing to update her name with the Office of Tribal Enrollment removes her right to participate in the electoral process, See Oral Argument Transcript at 11. This argument also leads to a disproportionate effect on female voters to participate at this stage of the electoral process as females tend to change their names, *226 through marriage and divorce. The result here is an injustice to the prospective candidate Valerie Kempen, to the tribal member Krysde Howald whose participation was ruled ineligible by the Election Board because of her name change and to the District 4 voters who are denied another potential choice for legislator.

. See Dallas White Wing v. HCN Election Bd. Et al., SU 07-09, — Am. Tribal Law-, 2007 WL 6947912 (HCN S.Ct., June 4, 2007) at 7.

. The Election Board duties include: "ensure that all candidates meet the qualifications for office and/or verify that all documents to be true and accurate.” 2 HCC § 6.6(b)(1)(c). The Election Code (2 HCC § 6) is enacted to provided basic rules and establish procedures to ensure that all elections are conducted in a fair and proper manner. 2 HCC § 6.2.

. The critical sentence in dispute is: "The Election Board shall issue a decision within five (5) working days of receipt of the appeal.”

. The Supreme Court has previously adopted an abuse of discretion standard for election appeals. Kimberly Waukau et al., v. HCN Election Bd., 11 Am. Tribal Law 210 (HCN S.Ct.2013) at 2. This standard applies requires the Court to determine if any error of law was made by the lower court in issuing its decision. Did the lower court decide the matter in an unreasonable, unconscionable and arbitrary manner without considering the facts and law properly? Id. citing Daniel Youngthunder, Sr v. Jonette Pettibone et al., SU 00-05 (HCN S.Ct., July 28, 2000) at 2.

. When reviewing questions of law, the Court employs a de novo standard of review, meaning that it examines the matter anew. Hope B. Smith v. Ho-Chunk Nation et al., SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 5 n. 3.

. See Order (Enjoining Legislative Election; Denying Motion to Dismiss; Reversing and Remanding), CV 15-03 (HCN Tr. Ct., March 4, 2015) at 24.